IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Darnell Scott, ) | C/A No. 0:08-3240-HFF-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Anthony Padula, Lee CI Warden; Linda ) | |
| Dunlap, SCDC Medical Nurse Director; Gene ) | |
| Noles, SCDC Inmate Grievance Director; Jon ) | |
| Ozmint, SCDC Director; Doctor Davis, SCDC ) | |
| Medical Director; C. James; Geraldine Miro, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, James Darnell Scott ("Scott"), a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 against the defendants, who are all employees of the South Carolina Department of Corrections ("SCDC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (Docket Entry 96.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Scott was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 97.) Scott filed a response.[1] (Docket Entry 99.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

---

[1] The court notes that the defendants had previously filed a motion for summary judgment, which was denied with leave to re-file. Scott's current response specifically incorporates his response to the defendants' previous motion. (Docket Entry 47.)

## BACKGROUND

Scott essentially raises two claims: (1) that Defendants Padula, Dunlap, Noles, Davis, and James have violated his Eighth Amendment right to be free of cruel and unusual punishment by failing to provide him with prescription eyeglasses for approximately eight months, which caused him eye strain, pain, facial muscle spasms, permanent impaired vision, and headaches; and (2) that Defendants Padula and Miro have violated his First Amendment rights by disallowing Scott to have a religious book pertaining to his professed faith of Shetaut Neter while housed in the Special Management Unit ("SMU").

## DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

PJG

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Scott's Claims**

As an initial matter, Scott concedes that Defendant Ozmint should be dismissed from this action. Additionally, he acknowledges that he cannot recover damages from any of the defendants in their official capacities, and clarifies that he seeks only injunctive relief against the defendants in their official capacities, while seeking damages from the defendants in their individual capacities. (See Docket Entry 47 at 1.)

   **1.     Medical Claim**

Scott's Eighth Amendment claim fails for several reasons. To prevail on a claim pursuant to § 1983, a plaintiff must show: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States; (3) by a person acting under color of state law. See 42 U.S.C. § 1983. Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish a

claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

First, Scott has failed to identify any personal involvement by the named defendants with regard to his Eighth Amendment claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Mere knowledge is not sufficient to establish personal participation. Id. The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[2]

Here, the only personal involvement by the defendants that Scott alleges with regard to his medical claim relates to their handling of his complaints regarding his eyeglasses.[3] For example, he essentially alleges that Defendants Padula, Dunlap, Noles, Davis, and James did not promptly and

---

[2] The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisory liable for constitutional injuries inflicted by their subordinates).

[3] Apparently recognizing that his complaints about the failure to timely respond to his grievances themselves fail to establish a constitutional claim, see Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), Scott instead appears to argue that the defendants' alleged failure to address his grievances demonstrates their deliberate indifference to his needs. (Pl.'s First Resp. Opp'n Summ. J. at 7-8, Docket Entry 47 at 7-8.)

satisfactorily respond to his requests to staff, his grievances seeking a speedier eye appointment, or his later grievance about not receiving a response to his initial grievance. (See Am. Compl., Docket Entries 53 at 1 & 53-2 at 3-4.) Without more, allegations of a failure to investigate an issue, a failure to process a grievance, or a denial of a grievance are insufficient to establish personal involvement by a defendant in the deprivation alleged. See Nunn v. Busse, No. 3:10-CV-008 WL, 2010 WL 1710449, *6 (N.D. Ind. Apr. 26, 2010) (unpublished) (" 'Only persons who cause or participate in the [Constitutional] violations are responsible' " for those violations, failure to investigate or ruling against a prisoner's grievance 'does not cause or contribute to the violation.' ") (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)); George v. Pennsylvania Dep't of Corr., C/A No. 3:CV-09-1202, 2010 WL 936778, *4 (M.D. Pa. Mar. 11, 2010) (unpublished) ("Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate," as this is insufficient to demonstrate personal involvement) (internal quotation marks and citation omitted); Davis v. Chapple, No. 07-cv-321 (GTS/DRH), 2009 WL 6312502, *7 (N.D.N.Y. Nov. 4, 2009) (unpublished) (stating that "failing to receive a response to a complaint is insufficient to establish personal involvement especially when there is no other showing that defendant knew of or directly participated in any alleged violation") (internal quotation marks and citations omitted).

Further, Defendants Padula, Noles, and James are non-medical prison personnel. To establish a claim for denial of medical care against non-medical personnel, Scott must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course

*PJG*

of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

Here, the undisputed evidence shows that Dr. Edward L. Stahl, Jr. concluded that Scott's eye complaints "beginning in January 2008 did not require urgent or emergency evaluation and treatment." (Stahl Aff., Docket Entry 96-2 at 4.) Further, based on Dr. Stahl's review of the optometrist's examination in August 2008 and the staff's physical examinations, Dr. Stahl states that while Scott has impaired vision, he found "no evidence of permanent headaches, pain or muscle spasms caused by any alleged delay in getting eyeglasses" and that the "7-8 months tha[t] Plaintiff did not have prescription eyeglasses did not cause him any acute or permanent injury or damage." (Id.) Accordingly, Scott cannot show that these defendants were deliberately indifferent to any serious medical need.

Moreover, even if Scott could show personal involvement by the defendants, Scott's claims regarding an eight-month delay in replacing his eyeglasses fail to meet the deliberate indifference standard. Although Scott argues that his injury is permanent and therefore sufficiently serious to meet the constitutional standard, he has not presented admissible evidence from which a reasonable jury could find that he has sustained permanent injury resulting from the lack of eyeglasses during the eight-month period at issue.[4] See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was

---

[4] The court observes that Scott's reliance on a statement of Nurse Marcus Pratt that his symptoms resulted from the lack of prescription eyeglasses is hearsay. (See Scott Aff. ¶ 11, Docket Entry 47-1 at 2) (containing hearsay statement as to what Pratt said to him). Similarly, Scott's evidence from fellow inmates about the severity of Scott's vision problems is insufficient to establish a constitutional claim.

*PJG*

provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). Scott has therefore failed to show that the deprivation was sufficiently serious such that it resulted in the denial of the minimal civilized measure of life's necessities or that the defendants actually knew of a substantial risk to Scott and disregarded that substantial risk. See Farmer, 511 U.S. at 847.

Additionally, the defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Because Scott has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

### 2. Religious Claim

The defendants contend that the underlying issue regarding this claim—the recognition by SCDC of Scott's professed faith of Shetaut Neter—has already been decided. In Scott v. Ozmint, et. al., 467 F. Supp. 2d 564 (D.S.C. 2006), the court applied the test announced in Turner v. Safely,

482 U.S. 78, 89 (1987),[5] and determined that the SCDC policy, which details the steps an inmate must take to have a faith recognized, was rationally related to the legitimate government interest advanced and that the policy was also applied properly in deciding not to officially recognize Shetaut Neter. Accordingly, Scott's religious claim, which also stems from SCDC's decision not to officially recognize Shetaut Neter, appears to be barred by the doctrine of collateral estoppel. See Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998) ("For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.").

## RECOMMENDATION

Based on the above, the court recommends that the defendants' motion for summary judgment ([Docket Entry 96](#)) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 14, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[5] This test requires the court to determine: "(1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are 'ready alternatives' to the regulation." Id. at 89-91.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).